THE BOARD OF SUPERVISORS OF THE COUNTY OF LIVINGS-
TON *vs.* JOHN WHITE, Jun. and others.

It is not necessary, in a complaint, to allege the loss of a bond, to entitle the plaintiff to prove its loss and give secondary evidence of its contents.

The doctrine of profert has no place in the present system of pleading; ample provision otherwise existing for the production and inspection of papers. And, independent of profert, there never was any necessity or reason for saying any thing about the loss of the bond sued on, in stating the cause of action. *Per* T. R. STRONG, J.

What is sufficient evidence of the loss of a bond, to authorize the admission of secondary evidence of its contents.

Where an instrument is presented to the board of supervisors, by a county treasurer, as his official bond, the fact that it was sealed may, in the absence of any direct evidence on that subject, be inferred from the instrument being presented as a bond, which implies a sealed obligation.

A judgment in favor of the people, against a county treasurer, in an action for the recovery of money received by him in his official capacity, and the imprisonment of the defendant upon an execution issued on that judgment, do

not constitute any defense to a subsequent action against such county treasurer and his sureties, brought by the board of supervisors, for the recovery of the same money.

The provisions of the revised statutes on that subject contemplate a double direct liability by the county treasurer; one by him individually to the state, so far as the state tax is concerned, and the other by him, in connection with his sureties, to the county, on his bond, embracing the entire duties of the treasurer; upon each of which liabilities an action may be maintained.

The imprisonment of a treasurer, at the suit of the state, does not affect in any way the action at the suit of the county. Such an imprisonment is not a satisfaction of the liability which is the subject of that action.

APPEAL from a judgment entered at a special term, after a trial at the circuit. The action was commenced in August, 1856. The cause was tried at the Livingston circuit, before Justice JOHNSON and a jury, in October, 1857. The complaint alleged, that at a general election held in the county of Livingston, in the year 1854, the defendant, John White, jun., was duly elected county treasurer of said county of Livingston, for a term commencing on the first day of January then next, and continuing three years; that the said John White, jun. accepted said office, and executed an official bond with sureties; that the bond was approved by the board of supervisors, and filed in the office of the county clerk before he entered upon the discharge of the duties of his office; that John White, Henry F. Hill, John L. Harrison and William M. Bond, the other defendants, were the sureties on said bond; that the bond was in the usual form of a treasurer's bond. That in the year 1855, the said John White, jun., as such county treasurer, received the state tax of that year, amounting to $13,000, and also in the year 1856 the tax, amounting to $23,932. That on the first day of May, 1856, there was in his hands the sum of $28,444.92 of said tax, which he had neglected and refused to pay over according to law; that a demand of payment had been made by the state treasurer, and that the comptroller had directed the plaintiff to institute a suit on the bond; and the plaintiff demanded judgment for

the amount so in the hands of the said treasurer. The said John White, jun., treasurer, and the other defendants, his sureties, answered separately, putting in issue the matters set forth in the complaint. The defendant John White, jun., in addition to a denial of the execution and delivery of the bond sued on, set up as a defense, that on the 20th day of August, 1856, the people, by their attorney general, commenced an action against him, to recover the same money, which it was alleged he had neglected to pay to the state treasurer as required by law, being the same cause of action for which this action was commenced; that judgment was duly obtained in said action; that an execution had been issued on said judgment, against the body of said John White, jun., on which he had been arrested, and confined in jail; that he was so confined at the time of the answer; and he claimed that such arrest and imprisonment was a satisfaction of said judgment, and a bar to any further proceedings by the plaintiffs in this action. On the trial it appeared, that at the November election, 1854, John White, jun. was elected treasurer of the county of Livingston, for the term of three years from the 1st day of January, 1855. That after his election, the said White presented to the board of supervisors of the county an official bond, purporting to be signed by himself, John White, and Henry F. Hill. It seems that the board of supervisors did not regard the sureties as sufficient, and the bond was returned to White for additional sureties. Subsequently a bond was again before the board, with the additional names of John L. Harrison and William M. Bond. The last time that this bond was seen, so far as the testimony shows, it was before the board of supervisors. It does not appear that it was ever taken away from there. On the first day of January, White entered upon the discharge of the duties of his office. In July, 1856, it was ascertained that he had not paid over the state tax of 1855 and 1856; that on the first day of May, 1856, there was due to the state the sum of $28,444.92. This state of things called attention to the treasurer's official

bond. On examination at the county clerk's office, where it should have been filed, it could not be found. From the minutes kept by the board of supervisors for the year 1855, it appears that in November of that year the board settled with the treasurer, through a committee appointed for that purpose; that such committee reported to the board a state-. ment of the account of the receipt and expenditure of money by the treasurer for that year, in which statement is an item as follows: "To paid state tax, $13,797.57." The committee also reported that they had compared the vouchers for all moneys paid out, and found them to agree in every particular with the treasurer's books, and with the said statement; which report was adopted. At the time of the trial of this action a judgment had been obtained in favor of the people against John White, jun., for the state tax received by him in the years 1855 and 1856, being the same money for the recovery of which this action was brought; and the defendant, John White, jun., was then imprisoned upon an execution duly issued on said judgment. At the close of the plaintiff's testimony, the defendants moved for a nonsuit, on these grounds: 1st. That there was no evidence in the case to show that the bond was lost, as it was not proved that it was filed in the clerk's office; consequently there was not sufficient legal proof of its execution. 2d. There was no proof that the defendant signed and sealed the bond, assuming it to be lost; at least there was no proof that the defendants Harrison and Bond signed and sealed the bond; and as to them, one or both, the plaintiffs should be nonsuited. 3d. There was no proof that the bond was approved by the supervisors. 4th. There was no proof of the delivery of the bond. 5th. The plaintiffs had not made out a cause of action.

The court denied the motion, and the defendants excepted. It was admitted by the plaintiffs' counsel that John White, jun., had been arrested and was then imprisoned upon an execution duly issued by the attorney general, upon a judgment recovered by the state against the said John White,

jun., for the sum of $28,444.92, being the same money for the recovery of which this action was brought. The counsel for the defendants then moved the court to nonsuit the plaintiffs, on the ground that the imprisonment of the defendant John White, jun., on the execution issued on the judgment in favor of the state was a satisfaction of the judgment, and on the further ground that the defendant John White, jun., was not liable for a second judgment for the same cause of action. The court overruled the motion, and the counsel for the defendants excepted to the decision.

The testimony being closed, the counsel for the defendants renewed the motion for a nonsuit, upon each of the grounds before stated, and on the further grounds, that it now appeared in proof that the bond had never been filed in the office of the county clerk, and consequently there had been no delivery of the bond. The court denied the motion, and the counsel for the defendants excepted. The judge charged the jury, among other things, that, as a question of law, when the bond was brought to the board of supervisors for their approval, and was approved by them, it was a sufficient delivery to bind all who signed it; and that, as a matter of law, the persons who signed the bond were bound by it, although it never got into or was filed in the county clerk's office. To this charge the counsel for the defendants excepted. The counsel for the defendants requested the judge to charge the jury that, as matter of law, there was no legal evidence of the delivery of the bond, and therefore the plaintiffs could not recover; that there was not sufficient evidence to authorize them to find that the bond was delivered; that there was no evidence in the case that John White or Harrison, or either of them, signed and sealed the bond; nor any evidence to authorize the jury to find a verdict against them, or either of them. The court refused so to charge, and the counsel for the defendants, in due form of law, excepted to the decision in each particular.

The jury found a verdict against the defendants for $30,000;

and from the judgment entered thereon, the defendants appealed.

*James Wood, jun.,* for the appellants.

*Scott Lord,* for the plaintiffs.

*By the Court,* T. R. STRONG, J. It was not necessary to allege in the complaint the loss of the bond, to entitle the plaintiffs to prove its loss and give secondary evidence of its contents. Under the former system of pleading, in cases like the present, profert of the bond, or an excuse for the omission of profert, in the declaration, was required, and if the declaration contained the usual statement of profert, and the defendant pleaded *non est factum,* the production of the bond at the trial could not be excused by proof of its loss previous to declaring ; but the doctrine of profert has no place in the present system of pleading, ample provision otherwise existing for the production and inspection of papers. Independent of profert, there never was any necessity or reason for saying any thing about the loss of the bond, in stating the cause of action.

The evidence of the loss of the bond is not very strong, but I think it is sufficient. A witness, who was the clerk of the plaintiffs when the bond was taken, testified that he recollected the approval of the bond by the plaintiffs ; that he thought it was in the evening; and that he thought he handed the bond to the county clerk or his deputy the next morning. On his cross-examination he testified, he did not recollect the act of handing the bond to the county clerk. Being re-examined, he testified his recollection was strongest that the bond was handed to Orton. Orton was the clerk of the county. The fair construction of this testimony, I think, is, that the witness had a recollection that he delivered the bond to the county clerk, and believed he had done so, but was not entirely confident of the fact. It was the duty of the plaintiffs

to have the bond filed in the office of the county clerk; their clerk would naturally be charged with that duty; and a presumption of some force may be indulged that this duty was performed. The testimony of the clerk, in connection with this presumption, I consider reasonable proof that the bond was filed in the county clerk's office; and it is not overcome by the testimony of Orton, that he did not, to his knowledge, receive the bond, and that it was not in the county clerk's office, to his knowledge. The substance of the testimony of Orton is, that he had no recollection on the subject; which is mere negative testimony. The testimony of Root, who succeeded Orton as county clerk, that the bond was not in the office on the 2d day of August, 1856; that he had searched before the meeting of the board of supervisors in June, 1856; that he searched several times; that the bond could not be found in his office; and that he had no recollection of having seen the bond in his office, is reasonable proof that the bond was not in that office at the time of the trial.

No error, in my opinion, was committed in overruling the motion for a nonsuit. The question raised upon the motion, as to the loss of the bond, has been sufficiently considered. In regard to the execution of the bond, it is proved as to part of the defendants, John White, jun., John White and Henry F. Hill, by the testimony of witnesses acquainted with their handwriting, and who had seen their names to the bond, that they thought the names their signatures; and as to the other defendants, Harrison and Bond, witnesses on the part of the plaintiffs testified, that their names were to the bond, and that those defendants admitted they were bail for John White, jun., the treasurer. The clerk of the plaintiffs, before referred to, testified, that his recollection was that the bond was sealed; but, without any direct evidence on that subject, the fact of seals being affixed might well be inferred from the instrument being presented as a bond, which implies a sealed obligation. (*McBurney* v. *Cutler*, 18 *Barb.* 203.) It is proved that the bond was presented to the plaintiffs, and that

Supervisors of Livingston *v.* White.

it was satisfactory to them. This was sufficient evidence of a delivery. Neither the indorsement of approval, nor the filing of the bond, was necessary to a delivery. They are acts which might be performed subsequently. I am satisfied that the evidence was ample to call for the submission of the question of execution to the jury.

The judgment in favor of the people against John White, jun. in an action for the recovery of the same moneys for which this action was brought, and the imprisonment of the defendant by virtue of an execution on that judgment, are not, I think, any defense to this action It is proved that the bond was conditioned, as required by the statute, for the faithful execution of the duties of the office of treasurer, and the payment according to law of all moneys which should come to the hands of the treasurer, and for rendering a just and true account thereof, " to the board of supervisors, or to the comptroller of this state, when thereunto required." ( 1 *R. S.* 863, § 81, *5th ed.*) By § 99, (*p.* 865,) " whenever the condition of the county treasurer's bond shall be forfeited, to the knowledge of the board of supervisors of the county, and whenever such board shall be required to do so by the comptroller, they shall cause such bond to be put in suit." Sections 47 and 48, (*p.* 926, *same ed.*) provide for a statement by the comptroller, of the accounts of the county treasurer on the first day of May, annually; and that if any county treasurer shall refuse or neglect to pay the balance of any state tax unpaid by him, the comptroller shall deliver a copy of such county treasurer's account to the attorney general, " who shall prosecute forthwith ; and the state shall be entitled to recover the balance due with interest," &c. By § 49, " the comptroller may also, in his discretion, direct the board of supervisors of the proper county to institute one or more suits on the bond of such treasurer and his sureties." All losses sustained by the default of the treasurer of any county are chargeable to such county, (§ 61, *p.* 928.) These provisions appear to contemplate a double direct liability by the

county treasurer; one by him individually to the state, so far as the state tax is concerned; and the other by him, in connection with his sureties, to the county, on his bond, embracing the entire duties of the treasurer; upon each of which liabilities an action may be maintained. It is the duty of the board of supervisors, for the protection and security of the interests of the county, to cause the bond to be put in suit upon knowledge of a forfeiture; and it is the duty of the attorney general, in regard to the interests of the state, to prosecute the county treasurer forthwith upon receiving from the comptroller a copy of such county treasurer's account, showing a balance of a state tax unpaid by him. These are separate and distinct causes of action, although the object may be the recovery of the same money; the former arising upon the bond, and the latter upon the statute. Actions to enforce them may proceed concurrently until payment is obtained; neither, before payment, constituting any defense to the other. The imprisonment of the treasurer at the suit of the state does not affect, in any way, the action at the suit of the county. Such an imprisonment is not a satisfaction of the liability which is the subject of that action.

The defendants were precluded by their stipulation, admitting the balance due from the county treasurer, from controverting that fact; hence extracts from a report of a committee of the board of supervisors on the treasurer's accounts previous to the stipulation, showing a balance due the treasurer, which report was accepted by the board, but does not appear to have been further acted upon, was inadmissible as evidence of payment of the moneys in question. And there is no force in the position that the mere fact of the report of the committee, and its acceptance by the board of supervisors, is an estoppel *in pais* in respect to the sureties, preventing the board from asserting any claim against them contrary to the report. It does not appear that the sureties have

done, or omitted, or suffered, any thing by reason of those proceedings.

The charge of the court to the jury was correct, for reasons already stated; and the court did not err in refusing to charge that there was not sufficient evidence to warrant their finding that John White or Harrison executed the bond; or that the bond was delivered. The only evidence on that subject, additional to what has been referred to, is the testimony of Harrison and John White, in substance that they signed the bond of John White, jun. as treasurer, for his first term, but did not to their recollection sign any bond for him as treasurer subsequently. The evidence is of a negative character, the force of which it belonged to the jury to consider, in connection with the other evidence on the question of execution and delivery. The judgment must be affirmed.

Judgment affirmed.

[MONROE GENERAL TERM, September 5, 1859. *T. R. Strong, Smith* and *Johnson*, Justices.]